IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-cv-468-WHA |
| ) | |
| TOMBERLIN, YOUNG & FOLMAR ) | (wo) |
| INSURANCE CO. d/b/a SOUTH CENTRAL ) | |
| AGENCY, JOHN S. TOMBERLIN, and ) | |
| HAROLD W. YOUNG, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| TOMBERLIN, YOUNG & FOLMAR ) | |
| INSURANCE CO. d/b/a SOUTH CENTRAL ) | |
| AGENCY, JOHN S. TOMBERLIN and ) | |
| HAROLD W. YOUNG ) | |
| ) | |
| Counterclaimants ) | |
| ) | |
| v. ) | |
| ) | |
| AUTO-OWNERS INSURANCE COMPANY, ) | |
| ) | |
| Counterclaim Defendant ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on the Motion for Summary Judgment on all Claims and Counterclaims, filed by Defendants/Counterclaimants John S. Tomberlin; Tomberlin, Young & Folmar Insurance Co.; and Harold W. Young (Doc. #112). The court has jurisdiction based on diversity of citizenship.

This case began with a Complaint filed in the Northern District of Florida by the United

States of America against the Dick Corporation and others. *United States, etc. v. Dick Corp., et. al.*, 3:08cv56/MCR/MD.   In July 2010, a Fourth-Party Complaint was filed by Auto-Owners Insurance Company ("Auto-Owners") against Tomberlin, Young & Folmar Insurance Company d/b/a South Central Agency, John S. Tomberlin and Harold S. Young (collectively "the Tomberlin Defendants").   Auto-Owners and the Tomberlin Defendants jointly stipulated to a transfer of the action to the United States District Court for the Middle District of Alabama.

After the case was transferred to this court, the Tomberlin Defendants filed an Answer. Auto-Owners then filed an Amended Complaint,[1] with leave of court.  Auto-Owners brings claims for breach of contract (Count I),  breach of fiduciary duty during the application process (Count II), breach of fiduciary duty following the application process (Count III), indemnification (Count IV), negligent misrepresentation (Count V), and suppression of material facts (Count VI).

The Tomberlin Defendants Amended their Answer in response to the Amended Complaint, and included counterclaims.  They then moved to dismiss the Complaint, or in the alternative, for judgment on the pleadings.  This court denied the motion without prejudice to the issues raised in the motion being raised again in a properly-filed Motion for Summary Judgment

The Tomberlin Defendants have moved for summary judgment as to all claims against them, and as to their counterclaims against Auto-Owners.  The court held oral argument on the pending motion on May 17, 2012.

In moving for summary judgment, the Tomberlin Defendants have re-asserted two

---

[1] The complaint is labeled the First Amended Complaint, but there was a First Amended Complaint filed before the case was transferred to this court.  *See* Doc. #11. Therefore, the court will refer to the most recent complaint as the Amended Complaint.

arguments which were raised in their Motion to Dismiss, and which apply to multiple counts in the Complaint. This Memorandum Opinion and Order addresses those arguments.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III.  FACTS

The facts, taken in a light most favorable to the nonmovant, are as follows:

Plaintiff Auto-Owners is an insurance and surety company.  Among other tasks, Auto-Owners issues performance and payment bonds related to construction projects.  In September of 2005, Auto-Owners provided South Central Agency, an independent insurance and bonding agency in Andalusia, Alabama, a contract to solicit surety bonds on behalf of Auto-Owners.  South Central Agency was owned and operated by John Tomberlin ("Tomberlin") and Harold Young ("Young") (collectively referred to as "the Tomberlin Defendants").  The Tomberlin Defendants had previously entered into a contract with Auto-Owners to solicit policies of insurance.

The September 2005 agreement between Auto-Owners and the Tomberlin Defendants included a Letter of Instructions which authorized the Tomberlin Defendants to solicit bonding business if, after a thorough investigation, they were satisfied that it was a proper risk for Auto-Owners to assume.

Michael Smith ("Smith") approached the Tomberlin Defendants about a surety bond on a construction subcontract in Pensacola, Florida.   His company, S&S, signed on to perform four

subcontracts at the Naval Air Station in Pensacola for a total of $9,402,964. Dick Corporation was the general contractor on the project. Shelby Gardner ("Gardner") is the CEO of Dick Corporation.

S&S had started work at the Naval Air Station in May of 2006 on two of the subcontracts with Dick Corporation.

The Tomberlin Defendants began attempting to obtain a bond for S&S through Auto-Owners, and in June 2006, in an effort to secure the bonding, S&S sought a letter of credit. Tomberlin sent an email to Auto-Owners in June 2006 stating that a letter would come from the bank confirming that $2,000,000.00 in credit was available to S&S. S&S received a $1 million line of credit, which was exhausted by November 2006. Jim House, the bond underwriting manager for Auto-Owners, stated in his deposition that in December 2006, Tomberlin told him that S&S had a $2 million line of credit and that none of the line had been used. (Doc. # 119-8 at p. 282: 10-13). Auto-Owners issued a performance bond and a payment bond to S&S for a subcontract with Dick Corporation in January 2007.

The parties dispute whether at the time of the issuance of the bond in January of 2007, S&S was in default with the Dick Corporation on other subcontracts. The parties are in agreement, however, that S&S had not been declared in default by Dick at that time.

Tom Froman ("Froman"), Auto-Owners Vice President, testified in his deposition that during the October 2009 deposition of Gardner, Dick Corporation's CEO, in the Florida case, Gardner mentioned that there was a meeting which occurred with Gardner, and Defendants Smith and Tomberlin, in August 2007, during which Gardner was ready to declare S&S in default, and intended to so-notify Auto-Owners, but based on Tomberlin's assurances and

urgings, Gardner did not. (Doc. #129-9 at pages 28-29). Auto-Owners states that it first learned of the Tomberlin Defendants' conduct during the deposition of Gardner.

Ten months after the bond was issued, in October of 2007, Auto-Owners was provided with a written notice of a potential claim and attempt to formally declare a default on the bonds, when Auto-Owners received a 72 hour notice to cure from Dick Corporation. There was no attempt to cure the default. On October 19, 2007, Dick Corporation formally declared a default on the bond and sent Auto-Owners a notice of the claim.

Auto-Owners was sued by Dick Corporation on the performance bond that Auto-Owners had issued in *United States, etc. v. Dick Corp.*, 3:08cv56/MCR/MD. After several years of litigation, Auto-Owners settled with Dick Corporation, with a mediator determining the amount Auto-Owners had to pay on the bond.

## IV. DISCUSSION

The two grounds for summary judgment which this court will address in this Memorandum Opinion and Order are the voluntary payment rule and the statute of limitations.

### A. The Voluntary Payment Rule

The Tomberlin Defendants argued in an earlier-filed Motion to Dismiss or for Judgment on the Pleadings that this case is barred by the voluntary payment rule. The Amended Complaint seeks an amount of $1,156,000, which is the amount paid to Dick Corporation in settlement of Dick Corporation's claim on the bond, as well as expenses incurred during and prior to the Dick Corporation litigation. *See* Amended Complaint at ¶ 19. In its brief in opposition to the motion, Auto-Owners stated that in addition to the payment on the performance bond to Dick Corporation, as obligee, Auto-Owners had smaller losses on the labor and material

payment bond because it had to pay suppliers money owed to them by S&S. (Doc. #85 at pages 25-26). Based in part on the allegation, and representation in brief, that there were losses other than the amounts paid in settlement, the court denied the motion without prejudice to the voluntary payment defense being raised in a motion for summary judgment. (Doc. #96 at p.4).

In support of their Motion for Summary Judgment, the Tomberlin Defendants have cited the deposition testimony of Froman in which he confirmed that there were no claims paid under the payment bond. Auto-Owners does not appear to cite any evidence contrary to this testimony by Froman. Now that there has been factual development in the case, therefore, it appears that the parties are in agreement that the "expenses incurred during and prior to the Dick Corporation litigation" does not include payment on any payment bond, and are actually the "attorneys' fees and other litigation costs . . . [which] arose in the Dick litigation." (Doc. #119 at p. 35). Furthermore, although Auto-Owners has asserted both contract and tort claims in this case, it appears that the measure of damages Auto-Owners seeks in this case for all of its claims is the losses incurred from issuance of the bond, ie., the settlement payment to the Dick Corporation, and the attorneys' fees and costs incurred during the Dick Corporation litigation. It is that amount, therefore, which the Tomberlin Defendants claim cannot be recovered under the voluntary payment rule. The Tomberlin Defendants also have now argued that, to the extent that the voluntary payment doctrine is limited to the amounts actually paid in a voluntary settlement, a claim for litigation costs is precluded under Alabama law, citing *Harley-Davidson of Mobile, Inc. for Use and Ben. of Universal Underwriters Ins. Co.*, 435 So. 2d 1308, 1309 (Ala. Civ. App. 1983).

Auto-Owners argues that the voluntary payment doctrine does not apply in this case, and

that attorneys' fees are recoverable.

In deciding the issues raised by the parties, the court has considered the briefs, oral argument, and evidence cited in support of and opposition to the motion for summary judgment, as well as the earlier-filed briefs in support of and in opposition to the Motion to Dismiss.

The voluntary payment rule is that "where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion." *Mt. Airy Ins. Co. v. The Doe Law Firm*, 668 So. 2d 534 (Ala. 1995). The facts of *Mt. Airy* involved an attempt to recover settlement payments made under an indemnity, not subrogation theory, in which the insurer paid amounts in settlement of third party claims without the consent of the insured or a judgment. *Id.* at 538. The case has not, however, been limited to that context. *See, e.g., U-Haul Co. of Alabama, Inc. v. Johnson*, 893 So. 2d 307 (Ala. 2004) (remanding case for analysis of *Mt. Airy* voluntary payment rule in a case involving overcharges of sales tax).

In opposing summary judgment, Auto-Owners relies on *RSUI Group, Inc. v. Willis of Alabama, Inc.*, No. 07-0142-WS-B, 2007 WL 2469571 (S.D. Ala. Aug. 29, 2007). In that case, the voluntary payment rule did not apply because an insurance agent caused the insurer to be legally obligated to pay under an insurance policy by failing to include a particular exclusion in the insurance binder as he had been instructed. *Id.* at *1. The court reasoned that it would make little sense to hold that a party with an "inescapable obligation, wrongfully created by another, to pay an innocent third party forfeits all right to be made whole by the wrongdoer if he honors that obligation." *Id.* The court explained that even if Alabama law would recognize such a principle, the defendant in that case had not met its burden in demonstrating that the principle exists. *Id.*

The court's conclusion was that *Mt. Airy* did not apply under the facts when there was a legal obligation to pay. *See id.*

This court has had occasion to examine the applicability of *RSUI Group, Inc.* to third-party payments. *See Greyhound Lines, Inc. v. Goodyear Tire & Rubber Co.*, 3:08cv516, 2009 WL 3079198 (M.D. Ala. Sept. 23, 2009). In that case, the court concluded that *RSUI Group., Inc.* was distinguishable because the bus company which sought recovery of payments it had made to passengers had no legal obligation to pay the third-party passengers who had been injured in a bus accident which was allegedly caused by a defective tire manufactured by the defendant. *Id.* at *6.

In the instant case, Auto-Owners has argued that it had a legal obligation to pay Dick Corporation on the bonds, and only entered into a settlement as to the amount that would be paid. Auto-Owners contends that the Tomberlin Defendants were parties in the Dick Corporation suit, and were provided court notice that Auto-Owners was settling its claim with Dick Corporation.

The Tomberlin Defendants, while acknowledging that Auto-Owners had an obligation under the bond, stated during oral argument that Auto-Owners could have satisfied its obligation without making the payment it made to Dick Corporation by, for instance, hiring another contractor to complete the project. The Tomberlin Defendants also argued that Auto-Owners could have paid the bond without engaging in litigation and incurring that expense. The Tomberlin Defendants state that this court should distinguish this case from *RSUI Group, Inc.*, because the Tomberlin Defendants did not violate specific instructions from Auto-Owners.

This case is distinct from the facts presented in *Mt. Airy* and in *Greyhound Lines, Inc.* In

this case, under Auto-Owners' theory, viewing the facts in a light most favorable to the nonmovants, the Tomberlin Defendants' failure to perform duties as soliciting agents for the bond caused Auto-Owners to be legally obligated to pay for S&S's default through a bond Auto-Owners would not have issued but for the Tomberlin Defendants' actions. *See* Phillip G. Alber, *Making Sense Out of Performance and Payment Bonds*, 71 Mich. B.J. 1020, 1021 (1992) (stating that "[o]nce issued, the bond cannot be cancelled or rescinded even if it was obtained by fraud. Since the owner has relied upon the bond in issuing the contract, the surety cannot unilaterally cancel the bond to the detriment of the obligee."). The Tomberlin Defendants have not cited any authority, and the court is not aware of any, in which the voluntary payment rule has been applied by Alabama courts to a case presenting the facts of the instant case. Finding no authority in Alabama law to apply the voluntary payment rule under these facts, and in light of the persuasive authority, *RSUI Group Inc.*, which applied Alabama law and found that the voluntary payment rule did not apply where there was a legal obligation to pay, the court concludes that the voluntary payment defense has not been demonstrated to preclude Auto-Owners' claims against the Tomberlin Defendants in this case. The Motion for Summary Judgment is due to be DENIED to the extent that it rests on the voluntary payment rule.[2]

### B. Statute of Limitations

The Tomberlin Defendants have argued that the statute of limitations bars Auto-Owners' breach of fiduciary duty claims in Counts II and III, negligent representation claim in Count V,

---

[2] As to the additional argument that litigation expenses are not recoverable under the American Rule, or under Alabama law, having found that the involuntary payment rule does not preclude Auto-Owners' claims entirely, that issue is one of damages, and can be raised in a motion in limine before trial.

and suppression claim in Count VI of the Amended Complaint   The Tomberlin Defendants contend that the claims filed in 2010 arose from conduct in 2006 and 2007.

Auto-Owners' position in its Amended Complaint, and in response to the Motion for Summary Judgment, is that it was not aware of the Tomberlin Defendants' conduct until the deposition of Dick Corporation CEO Gardner in the Florida case.   As stated earlier, Froman testified in that deposition that Gardner was ready to declare S&S in default in August of 2007, and intended to so-notify Auto-Owners, but based on Tomberlin's assurances and urgings, Gardner did not.  (Doc. #129-9 at pages 28-29).  Auto-Owners states in its brief that it had thought that the fact of S&S's difficulties in performing its contract were a surprise to the Tomberlin Defendants, but discovered otherwise during Gardner's deposition in the Dick Corporation litigation.  Auto-Owners contends that just because it became aware of the S&S default at an earlier point does not also mean that it should have been aware of the conduct of its soliciting agents.

The statute of limitations begins to run when a plaintiff has "such knowledge ... sufficient to provoke inquiry in reasonable minds which would have led to the facts on which the claims in this action are based." *Robbins v. Sanders,* 890 So.2d 998, 1012 (Ala. 2004) *(citing Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485, 488 (Ala.1977)).   This question is generally one for the jury.  *See Cork v. Marriott Intern., Inc*., 426 F. Supp. 2d 1234, 1239 (N.D. Ala. 2006).

In their initial Motion to Dismiss, the Tomberlin Defendants relied on Alabama case law which holds that the statute of limitations begins to run when a party has facts that should have provoked inquiry in the mind of a reasonable person, not when the party has actual knowledge of

11

injury.  *See Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187 (Ala. 2001) (stating that statute of limitations began to run where insured was provided written letter which would have led a reasonable person to investigate the intent of its insurer to pay a third-party).   Therefore, the court agrees with the Tomberlin Defendants that Auto-Owners' evidence as to when it states it acquired knowledge of conduct by the Tomberlin Defendants is not necessarily dispositive.  It is, however, the Tomberlin Defendants' burden, in moving for summary judgment, to show as a matter of law that the statute of limitations ran more than two years before the filing of the Complaint.

The Tomberlin Defendants have pinpointed several dates and have argued that, assuming that alleged misstatements were made as alleged by Auto-Owners, the statute of limitations began to run on one of these dates.  The court takes each one of these in turn.

**August, 15, 2006**[3]--The Tomberlin Defendants state that on August 15, 2006, Tomberlin's first representation was shown to be false when the line of credit for $1,000,000 for S&S came through, because it was half of what Tomberlin promised Auto-Owners.[4]

---

[3] It is not entirely clear to the court why the date August 15, 2006 was chosen, but it appears that that is the actual date that the line of credit was available.  It is not clear, however, that Auto-Owners would have had any notice that the line of credit was available as of that date.

[4] The Tomberlin Defendants state that this representation was not alleged in the Amended Complaint as a statement which forms the basis of any claims. (Doc. #122 at p.7 n.5).  The Tomberlin Defendants argue that Auto-Owners' responsibility to look into what was being provided by the Tomberlin Defendants was nevertheless triggered on that date.  The court will address in a separate Memorandum Opinion and Order to be filed on a later date the issue of whether the representation by Tomberlin has been alleged as a separate claim, as well as the contention by the Tomberlin Defendants that the claims in Counts I and II of the Amended Complaint are limited to claims based on Smith's failing to obtain bonding on subcontracts, and not any other financial issues of Smith.  To aid in that determination, the court will give Auto-Owners an opportunity to file a short supplemental brief that addresses those issues.

The sequence of events leading up to that date began in June 2006. Tomberlin sent an email to Auto-Owners in June 2006 stating that a letter would come from the bank confirming that $2,000,000.00 was available. The Tomberlin Defendants have attached to their reply brief a letter dated July 10, 2006 in which Kelly Baxter of the People's Bank wrote a letter to Jim House of Auto Owners which states that Smith had been approved for a line of credit in the amount of $1,000,000.00 and that the bank was "willing to entertain new loan requests." (Doc. #122 p. 15).

Auto-Owners has cited the deposition of Jim House in which he stated that he filled out a document on December 18, 2006, and at that time he wrote that S&S had a two million dollar bank line which had not been used, based on what Tomberlin told him in December 2006. (Doc. #119-8 at p. 281: 14-23-282: 13).

Auto-Owners is bringing claims against the Tomberlin Defendants on the theory that they induced Auto-Owners to issue the bond in January, 2007, and in so-doing failed to fulfill various duties, that stemmed from the relationship between Auto-Owners and the Tomberlin Defendants, not Auto-Owners and S&S. Specifically with respect to the line of credit, Tomberlin's December representation to Auto-Owners as to the amount of credit available to S&S could be viewed, in a light most favorable to the nonmovant, as being confirmation that S&S had a two million dollar unused line at that time, and therefore, consistent with the June email and the July bank letter as to the amount of credit. The court cannot conclude, therefore, that the statute of limitations began to run on claims against the Tomberlin Defendants when the line became available on August 15, 2006. *Cf. Ex parte Alabama Farmers Co-op., Inc.,* 911 So. 2d 696, 702 -703 (Ala. 2004) (stating that the "statute of limitations is tolled as to a fraud claim if, after

discovery of the fraudulent act and inquiry, the plaintiff is misinformed or falsely informed by the defendant and the plaintiff reasonably relies on the defendant's misrepresentation.").

**December 1, 2006** and **March 30, 2007** are the dates that Auto-Owners sent Smith notices of cancellation of his company's insurance policies which had been issued by Auto-Owners. While the court agrees with the Tomberlin Defendants that it would seemingly be problematic to argue that Auto-Owners did not know that it itself had cancelled insurance for lack of sufficient funds, that evidence only appears to relate to a duty to inquire as to S&S's deficiencies in paying for its insurance, and not Auto-Owners' duty to inquire as to the Tomberlin Defendants' conduct, particularly with respect to the Tomberlin Defendants' actions before the bonds were issued.[5] The court cannot conclude, therefore, as a matter of law that the statute of limitations for claims against the Tomberlin Defendants began to run on those dates.

The period prior to **October 19, 2007** is stated by the Tomberlin Defendants to be the period during which Auto-Owners failed to receive replies from Dick Corporation to its inquiries about the status of the project. While not receiving replies from Dick Corporation could have alerted Auto-Owners to an issue with S&S's performance of the construction contract, it has not been shown to provoke inquiry as a matter of law as to the Tomberlin Defendants' representations or actions.

**October 15, 2007** is the date Auto-Owners received a notice to cure from Dick Corporation. Clearly, this evidence demonstrates that inquiry would have been provoked into the circumstances of S&S's performance of its contract with the Dick Corporation, but the court

---

[5] It does not appear to the court that Auto-Owners has attempted to claim, as the Tomberlin Defendants assert, that the Tomberlin Defendants should have informed Auto-Owners that Auto-Owners had cancelled its policies with Smith as a separate basis for relief.

cannot conclude as a matter of law that this notice would have alerted a reasonable surety that its soliciting agent had breached any duties to it.

**October 19, 2007** is the date of default.   Again, this date appears relevant to the knowledge of S&S's deficiencies, but not the Tomberlin Defendants' alleged improper actions.

**December 2007**--the Tomberlin Defendants state that this is the date Auto-Owners hired accountants and established a loss reserve.  Auto-Owners responds that the hiring of the accountant was to investigate payment practices and to allocate payments among the four subcontracts, one of which was covered by its performance bond, and that this did not involve the Tomberlin Defendants.  The court agrees that the evidence, viewed in a light most favorable to the nonmovant, does not establish as a matter of law that Auto-Owners should have investigated the Tomberlin Defendants as of this date.

It may be that a jury will ultimately determine that Auto-Owners reasonably should have inquired into the circumstances regarding the Tomberlin Defendants' actions at a point which is earlier than two years prior to the filing of the claims in this case.  However, the evidence presented by the Tomberlin Defendants, viewed in a light most favorable to the nonmovant, does not establish as a matter of law that the statute of limitations began to run on any of the dates identified by the movants.   Because the burden of proof is on the Defendants, summary judgment is due to be DENIED as to the defense of the statute of limitations.

## IV.  Conclusion

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment (Doc. #112) is DENIED as to the voluntary payment rule and statute of limitations grounds asserted in the Motion.

      2.  The Plaintiff is given until **June 29, 2012** to file a short supplemental brief addressing Auto-Owners' contentions that John Tomberlin's representations/suppressions regarding the letter of credit issued to Smith in 2006 has not been alleged as a separate claim in the Amended Complaint, and the contention that the claims in Counts I and II of the Amended Complaint are limited to claims based on Michael Smith's failing to obtain bonding on subcontracts, and not any other financial issues of Michael Smith and his company which existed before the bond was issued by Auto-Owners. *See Gilmour v. Gates, McDonald and Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (stating that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

      The court will rule on other grounds for summary judgment asserted in the motion in a separate Memorandum Opinion and Order to be entered at a later date.

Done this 14th day of June, 2012.

                            /s/ W. Harold Albritton
                            W. HAROLD ALBRITTON
                            SENIOR UNITED STATES DISTRICT JUDGE